# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**In re D.H. and H.H.**

**No. 19-0920** (Raleigh County 16-JA-156-B and 16-JA-157-B)

**FILED**

**September 3, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Grandfather E.H., by counsel Gavin G. Ward, appeals the Circuit Court of Raleigh County's September 12, 2019, order terminating his custodial rights to D.H. and H.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Amy A. Osgood, filed a response on behalf of the children in support of the petitioner. Respondent Mother, by counsel Jane E. Harkins, filed a response in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in terminating his custodial rights without first granting him an improvement period and in denying him post-termination visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This matter previously came before this Court when the children's former guardian ad litem appealed the circuit court's December 13, 2017, order declining to adjudicate petitioner as an abusing guardian. *See In re D.H.-1 and H.H.*, No. 18-0032, 2018 WL 2945426, at *1 (W.Va. Jun. 11, 2018)(memorandum decision). Upon our review, we found that sufficient evidence existed to adjudicate petitioner as an abusing guardian. Specifically, we found that the children were placed with petitioner and his wife in 2014 and by September of 2016, D.H. had sustained several serious

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

injuries which were not sufficiently explained.[2] The child sustained a broken arm, which could have occurred accidentally; however, petitioner did not allege any accidental mechanisms prior to the initiation of the proceedings.[3] Rather, petitioner and his wife repeatedly alleged that the child's arm was broken by pulling his arm through a shirtsleeve. The child additionally sustained several rib fractures, and petitioner was unable to provide an explanation. A medical expert testified that broken ribs were most likely caused by someone intentionally squeezing the child but could have also been caused by being struck by a vehicle. Further, the child reported that his step-grandmother was the one who caused his injuries. Additionally, while in petitioner's care, the child unexplainably dropped from the ninety-seventh growth percentile to the twenty-second percentile. After being removed from petitioner's care, the child's growth rapidly climbed to between the fiftieth and seventy-fifth percentile, demonstrating a lack of nutrition while in petitioner's care. These unexplained injuries, along with the child's consistent disclosures, left this Court with the definite and firm conviction that sufficient evidence existed to adjudicate petitioner as an abusing guardian. Accordingly, this case was remanded with instructions to adjudicate petitioner as an abusing guardian and to forthwith hold a dispositional hearing.

Subsequently, the circuit court noticed a hearing to be held on August 28, 2018, wherein it would "take up the issues set forth in the Memorandum Order of the Supreme Court of Appeals . . . in Docket No. 18-0032." At the hearing, the circuit court adjudicated petitioner as having abused and/or neglected the children. The circuit court then denied petitioner's motion for an improvement period and immediately proceeded to terminate his custodial rights in violation of Rules 31 and 32 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. Accordingly, we remanded the matter with instructions to hold a properly noticed dispositional hearing and for further proceedings consistent with the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and Chapter 49 of the West Virginia Code. *See In re D.H. and H.H.*, No. 18-0829, 2019 WL 643307, at *3 (W. Va. Feb. 15, 2019)(memorandum decision).

Following the issuance of our second memorandum decision, the circuit court held a properly noticed dispositional hearing in July of 2019. Petitioner moved the circuit court for a post-dispositional improvement period. A Child Protective Services ("CPS") worker testified that, throughout the proceedings, petitioner refused to believe that his wife perpetrated physical abuse upon D.H. The CPS worker expressed concern over petitioner's reluctance to believe that his wife committed abuse and further stated that the DHHR was in opposition to an improvement period for this reason. Another social worker testified that, while the children experienced a bond with petitioner, she was unsure whether placement with him was in the children's best interests. Specifically, she testified

> [i]t's hard for me to answer just knowing how much change they went through previously and I don't know if they would—especially [D.H.] would be constantly

---

[2]Throughout the course of the underlying proceedings, petitioner was employed as a long-distance truck driver, and the children lived with his wife during his absences.

[3]Later in the proceedings, petitioner claimed that D.H. must have broken his arm by falling. However, petitioner never mentioned this accidental mechanism at any time prior to the initiation of the proceedings, including at doctor visits.

worried about whether or not someone would come into [petitioner's] life that could harm him again, because he does still talk about that often and he is in therapy, so it's hard for me to know.

Petitioner testified that he had separated from his wife and was in the process of finding a local job. Petitioner testified that, at the time of the adjudicatory hearing,

I didn't believe [the testimony]. Time changed, reading the Supreme Court ruling and all that, and like I say, you know, I've done a lot of thinking. I wasn't at home a lot. So the Supreme Court said it happened, so I mean it's [sic] had to have happened. And you don't know how many times I've kicked myself for not recognizing it at the time.

When asked whether he would comply with services, petitioner stated that he would "bend over backwards" to do whatever was necessary to regain custody of the children. However, when asked whether he had "done anything wrong in relation to" the children, petitioner responded "[t]here's been no allegations of me doing anything wrong against the boys. Yeah, I'm not the perfect person, I'm sure I've made mistakes." Petitioner also presented the testimony of his son and a friend, both of whom testified to petitioner's good character. After hearing evidence, the circuit court found that, as a guardian of the children, petitioner had a duty to take reasonable measures to protect the children from harm but did not. Petitioner observed the injuries to D.H., including a broken arm, broken ribs, head injuries, cauliflower ear, a flattened nose, and a dead tooth, but chose to believe that his wife was not capable of causing the injuries. The circuit court found that, although petitioner testified that he now realized that his wife caused the injuries, this realization "came too little, too late." Accordingly, the circuit court denied petitioner's motion for an improvement period and terminated his custodial rights upon sufficient evidence that there was no reasonable likelihood that he could correct the conditions of abuse and/or neglect in the near future and that termination of his custodial rights was in the children's best interests. Petitioner appeals the circuit court's September 12, 2019, dispositional order.[4]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided

---

[4]The father's parental rights were terminated during the proceedings below. The proceedings with regard to the mother remain ongoing. Should the children not be reunited with the mother following the proceedings, the permanency plan for the children is adoption through the Children's Home Society.

the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his custodial rights without first granting him an improvement period. Petitioner contends that he demonstrated that he was likely to fully participate in an improvement period. According to petitioner, he testified that he accepted the fact that his wife inflicted abuse upon the children. Further, petitioner was in the process of obtaining local employment and fully participated in supervised visits with the children. Petitioner claims that he would do whatever is needed in order to regain custody of the children and states that he should be granted an improvement period as the proceedings remain ongoing with the children's mother. We disagree.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). West Virginia Code § 49-4-610(2)(A) and (B) provide that a circuit court may grant a post-adjudicatory improvement period when a parent (1) requests an improvement period in writing and (2) demonstrates by clear and convincing evidence that he or she is likely to fully participate in the improvement period.

Here, petitioner failed to demonstrate that he was likely to fully participate in a post-adjudicatory improvement period. Throughout these proceedings, petitioner denied that his wife perpetrated physical abuse upon D.H. Substantial evidence was presented below indicating the extent of D.H.'s severe nonaccidental trauma, yet petitioner continued to deny that his wife was responsible and failed to provide a reasonable explanation for the child's injuries. While petitioner now claims that he realizes his wife perpetrated the abuse, this realization came not after his observance of the trauma inflicted, but only after reading this Court's memorandum decisions in the case, stating "the Supreme Court said it happened, so I mean it[] had to have happened." The circuit court found that this "realization" came "too little, too late." Moreover, during the dispositional hearing, petitioner failed to acknowledge his role in the abuse, stating "[t]here's been no allegations of me doing anything wrong against the boys. Yeah, I'm not the perfect person, I'm sure I've made mistakes." We have previously held that failure to acknowledge the issues of abuse and neglect renders an improvement period an "exercise in futility." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Given petitioner's continued refusal to believe that his wife was responsible for the abuse perpetrated upon the children and his failure to acknowledge his role in allowing the abuse, we find no error in the circuit court's decision to deny petitioner an improvement period.

The above-mentioned evidence also supports the circuit court's termination of petitioner's custodial rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect

or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when "the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect on his own or with help. As noted above, petitioner failed to acknowledge the abuse perpetrated by his wife and failed to provide a reasonable explanation for D.H.'s injuries. Petitioner also failed to acknowledge his own role in the abuse and neglect that occurred. Further, a social worker testified that she was unable to conclude that placement with petitioner was in the children's best interests. While the social worker observed a bond between petitioner and the children, she testified that D.H. continued to exhibit worry and concern over the abuse he suffered and talked about it frequently in his therapy sessions. Ultimately, the circuit court found that petitioner had a duty to take reasonable measures to protect the children from harm but failed to do so. Petitioner observed the injuries to D.H., but chose to believe that his wife was not capable of causing such injuries. Although petitioner testified that he now realized the injuries had been caused by his wife, we agree with the circuit court's conclusion that this realization "came too little, too late."

Additionally, while petitioner contends that his custodial rights should not have been terminated without first having been granted an improvement period, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, we find no error in the circuit court's termination of petitioner's custodial rights as there was sufficient evidence to find that there was no reasonable likelihood that he could correct the conditions of abuse and/or neglect in the near future and that termination of his custodial rights was in the children's best interests.

Petitioner next argues that the circuit court erred in denying him post-termination visitation with the children. Specifically, petitioner claims that the circuit court erred in failing to take the bond between petitioner and the children into consideration. Upon our review, we find no error.

We have previously held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among

5

other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). While the record indicates that petitioner indeed has a bond with the children, he fails to establish that continued contact would be in the children's best interest. D.H.'s social worker testified that the child continued to worry over the abuse he suffered and frequently talked about it in therapy. The evidence also established that the children were thriving in their foster placement, and the circuit court found that requiring visitation between the children and petitioner would disturb the children's progress and be contrary to their best interests. Accordingly, we find no error in the circuit court's decision to deny petitioner post-termination visitation with the children.

Lastly, because the DHHR is still pursuing an adoptive placement for the children, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for children within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

6

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 12, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  September 3, 2020


**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison